FILED & JUDGMENT ENTERED
Steven T. Salata

December 21 2023

Clerk, U.S. Bankruptcy Court
Western District of North Carolina

J. Craig Whitley
United States Bankruptcy Judge

# UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
## SHELBY DIVISION

In re:

**SHEILA MARIE CHESNEY**

Debtor.

Case No. 22-40109
Chapter 11

## ORDER DENYING MOTION FOR RELIEF FROM STAY

**THIS MATTER** was before this Court for hearing on November 17, 2023, upon Gina and Mark Keith's (the "Keiths" or "Movants") Motion for Relief from Stay (the "Motion") filed on October 18, 2023. *Motion for Relief from Stay*, Case No. 22-40109, Doc. 96 (Oct. 18, 2023).

The Motion first seeks relief from the automatic stay to confirm a prepetition arbitration award in favor of the Keith's and against Sheila Chesney ("Chesney" or the "Debtor"). Second, the Movants seek approval to execute upon alleged unscheduled property of this post-confirmation Subchapter V Debtor's bankruptcy estate. The Keiths argue that this failure to disclose property is indicative of Chesney's bad faith and serves as "cause" to permit them to seek collection of their nondischargeable debt outside of bankruptcy. *See Motion for Relief from Stay*, Doc. 96. at ¶¶ 36-37.

Chesney opposes the Motion arguing she has not received any such property, the Keiths are ignoring her confirmed plan, and the Keiths are attempting to elevate their claim over those of other creditors. *Debtor's Objection to Stay Relief Motion*, Case No. 22-40109, Doc. 102 at ¶ 17 (Nov. 10, 2023).

Having considered the parties arguments, I conclude the motion should be **DENIED**.

## Background

Sheila Marie Chesney filed this Subchapter V Chapter 11 reorganization case on August 31, 2022. *Voluntary Petition Under Chapter 11 Subchapter V*, Case No. 22-40109, Doc. 1 (Aug. 31, 2022). Chesney, age 70, formerly operated a South Carolina investment firm, Chesney & Company, LLC ("C&C"). In 2020, several clients accused Chesney and her company of having caused their investment losses in two privately held technology companies. Chesney shuttered C&C, and that company filed for bankruptcy protection in South Carolina in early 2022.

The Keiths are among those former clients. After an eight-day arbitration, the Keiths received a draft award against Chesney in the sum of $2,379,107.26. *See Order Approving Waiver of Discharge and Dismissing Adversary Proceeding*, Case No. 22-04002, Doc. 26 (June 21, 2023). An hour before the final arbitration award was issued, Chesney filed a Chapter 13 case in this judicial district. *In re Chesney*, Case No. 22-40004 (Feb. 3, 2022) (the "Prior Case"). In the Prior Case, Chesney scheduled the Keiths' claim as $0.00 and was prepared to relitigate their claim in bankruptcy court. *Voluntary Petition*, Case No. 22-40004, Doc. 1 (Feb. 3, 2022). However, the Keiths successfully opposed that effort, and I confirmed the Keiths' arbitration award on June 7, 2022. *Order Granting the Keith's Motion to Establish Enforceability of an Arbitration Award*, Case No. 22-40004, Doc. 51 (June 7, 2022). The Keiths also blocked confirmation of Chesney's Chapter 13 plan as Chesney was beyond the Chapter 13 debt limits.

*Order Sustaining Objection to Confirmation*, Case No. 22-40004, Doc. 50, (June 3, 2022). The Prior Case was dismissed. *Order of Dismissal of Bankruptcy Case*, Case No. 22-40004, Doc 52 (July 1, 2022).

Three months later, Chesney filed the current case, a Subchapter V reorganization under Chapter 11. The Keiths have opposed this reorganization attempt, as well. *See Objection to Confirmation of Subchapter V Plan & Motion to Dismiss Case*, Case No. 22-40109, Doc. 35 (Oct. 21, 2022).

On November 30, 2022, Chesney confirmed a Subchapter V plan over the Keith's objection (and those of other former customers), meaning this was a Section 1191(b) nonconsensual plan. *Order Confirming Reorganizing Plan*, Case No. 20-40109, Doc. 62 (Nov. 30, 2022) (the "Confirmed Plan"). The Confirmed Plan was legally sufficient because Chesney would contribute all of her projected disposable income to the Confirmed Plan. 11 U.S.C. § 1191(c)(2)(A) & (3). Unfortunately, and as Chesney's proposed disposable income is limited, the Confirmed Plan will likely pay general unsecured creditors only pennies on the dollar.[1] Even so, the Confirmation Order was not appealed, and it became final. The Confirmed Plan has since been substantially consummated. *See Notice of Substantial Consummation*, Case No. 22-40109, Doc. 78 (Jan. 16, 2023). The Confirmed Plan was not in default at the hearing date.

Through prior litigation in the current case, the Keiths were able to obtain a stipulation by Chesney that their debt is nondischargeable under Section 523(a). *Order Approving Waiver of Discharge*, Case No. 22-04002, Doc. 26. However, the Keiths remain discontent. They continue to insist "Chesney has abused the bankruptcy process and her actions have forced the Keiths to expend additional time and significant money beyond that already spent in the arbitration." *Motion for Relief from Stay*, Case No. 22-40109, Doc. 96, ¶ 39. Also, the Keiths have continued

---

[1] Chesney's Projected Disposable Income is a mere $650 per month.

3

to investigate Chesney in hopes of finding undisclosed assets and/or income.

Recently, the Keiths "discovered" that Chesney is now serving as personal representative for a deceased friend's estate. *Id*. at ¶ 19. When that friend passed, Chesney was appointed and qualified as personal representative on January 24, 2023. *Id*. at ¶ 16. Under applicable South Carolina state law, Chesney may receive compensation for her service as personal representative of up to five percent of personal property, real property sold in the normal course, and five percent of invested income. S.C. CODE ANN. § 62-3-719(a). The compensation is subject to the discretion and approval of the South Carolina Probate Court. *Id*.

Since her appointment as personal representative, Chesney has sold a home belonging to the decedent's estate for approximately $2,300,000. *Id*. at ¶ 18. Given the size of the friend's estate, the Keiths believe Chesney could garner up to six figures in compensation for her services. *See Motion for Relief from Stay*, Doc 96, ¶¶ 16-19.

The Keiths contend that Chesney's prospective commission is, under South Carolina law, a devise. *See e.g., id*. at ¶ 21; *see also Additional Briefing Concerning Keiths' Motion*, Case No. 22-40109 (Dec. 3, 2023).

Because Chesney's friend passed away on December 11, 2022, the Keiths argue that any property or proceeds regarding Chesney's service as Personal Representative was "property" acquired within 180 days of bankruptcy and drawn into the bankruptcy estate by Section 541(a)(1). *Motion for Relief from Stay*, Doc. 96, ¶ 35. Having acquired such property, the Keiths argue Chesney was required to, but did not, disclose these prospective commission in an amendment to her bankruptcy schedules. *See id*. at ¶¶ 32-36.

The Keiths consider the prospective commission to be a "windfall" to the Debtor. They view Chesney's failure to disclose the commission in an amended bankruptcy schedule to be

4

both "bad faith," and "cause" to lift the automatic stay. *Id.* at ¶ 40. Based upon this, the Keiths ask for stay relief to seek confirmation of their prepetition arbitration award from the U.S. District Court for the District of South Carolina, *id.* at ¶¶ 28-30, so that they may enforce their arbitration award against this undisclosed "property."[2] *Id.* at ¶ 40.

Alternatively, the Keiths argue that collection activity on their award is not stayed because a) their debt is nondischargeable, and b) because Chesney's confirmed plan "did not contain a provision enjoining collection activity by [c]reditors with respect to their nondischargeable claims. . . ." *Id.* at ¶ 41.

Chesney opposes the Motion. *Debtor's Objection to Stay Relief Motion*, Case No. 22-40109, Doc. 102 (Nov. 10, 2023). She maintains she is not an heir of the decedent's estate, but simply an officer. *Id.* at ¶ 16. To date, she has received no commission from that estate for her services and thus, no property. *Id.* at ¶ 17. Nor will she receive any such compensation until the decedent's estate is closed, currently estimated to be in late 2025. *Id.* Chesney argues she had no obligation to amend her schedules to reflect what is, at most, a position or office undertaken post-confirmation. *Id.* at ¶¶ 22-23.

Further, Chesney emphasizes that her Confirmed Plan binds all parties, including the Keiths. *Id.* at ¶ 46. According to Chesney, what the Keiths actually seek is a modification of her Plan, *id.* at ¶ 49, but a Subchapter V Plan cannot be modified at the request of a creditor. *Id* at ¶ 47. Finally, and even if Chesney had a right to commissions and the plan could be modified to receive them, she points out that these monies would inure to the benefit of all creditors, not just the Keiths. *Id.* at ¶ 42.

Upon review of the record, the arguments heard at the hearing, and the submissions of the parties, the Court concludes as follows:

---

[2] At hearing, the Keiths modified their request to permit all creditors to share in any recovery.

1. There is no present need to afford the Keiths stay relief to ask a different court to confirm their prepetition arbitration award against Chesney. The award was confirmed and deemed a final award in the Debtor's prior bankruptcy case. *Order Granting of the Keiths' Motion to Establish Enforceability of an Arbitration Award*, Case No. 22-40004, Doc. 51. If the Keiths require a separate judgment for post-bankruptcy recordation purposes, they may reopen the adversary file in the prior case to seek the same.

2. As to the Keiths assertions of undisclosed assets under Section 541(a)(5), whether a debtor has received "property" and "interests in property" are questions of state law. *In re Doughman*, 263 B.R. 905, 907 (Bankr. D. Kan. 1999). Here, this will be determined under South Carolina law.

3. Under South Carolina probate law, a ""Devise," when used as a noun, means a testamentary disposition of real or personal property, including both devise and bequest as formerly used, and when used as a verb, means to dispose of real or personal property by will." S.C. CODE ANN. § 62-1-201(7). A "Devisee" is "any person designated in a will to receive a devise." S.C. CODE ANN. § 62-1-201(8).

4. Chesney holds an appointed position with the decedent's estate, that of personal representative. However, it would not appear that she has received a "devise" within the meaning of the statute. There is no indication in this record that Chesney was named in the friend's will. Rather, she was appointed to administer the friend's estate. Pursuant to statute, and subject to the state court's discretion, Chesney stands to be compensated for services

rendered to the decedent's estate. Her commission is, at least on its outer limits, computed by reference to the assets of the decedent's estate. However, Chesney has not received a "bequest" or "devise" of property, as the Keiths maintain.

5. As to her new position, I am unaware of any obligation by an individual debtor to amend her schedules to list a newly acquired and temporary position like that of an executor or personal representative.

6. At this point, Chesney has not received any property within the meaning of Section 541. She will receive compensation for acting as executrix only when the decedent's estate is closed, and to the extent that the state court approves her compensation. If this occurs during the bankruptcy plan term, at that time Chesney will need to amend her schedules, as the commission will be drawn into the bankruptcy estate under Section 1186(a). 11 U.S.C. § 1186(a).

7. Even then, the creditors would appear to have little or no ability to realize on these monies during the plan term unless Chesney uses the same to make plan payments. A confirmed bankruptcy plan has a res judicata effect on the debtor and her creditors. *In re Varat Enterprises, Inc.*, 81 F.3d 1310, 1315 (4th Cir. 1996). Absent an unforeseen change in the debtor's circumstances, the Plan binds.

8. One exception to this res judicata effect arises from statutory provisions permitting modification of the confirmed Plan. For example, in Chapter 13, a confirmed plan is subject to modification at the request of the debtor, the Chapter 13 trustee, or an allowed unsecured creditor. 11 U.S.C. § 1329(a).

That statute permits the court to "increase or reduce the amount of payments on claims of a particular class provided for by the plan; [or to] extend or reduce the time for such payments." 11 U.S.C. §§ 1329(a), (a)(1)-(2); *see also In re Murphy*, 474 F.3d 143, 148 (4th Cir. 2007); *In re Arnold*, 869 F.2d 240, 244 (4th Cir. 1989).

9. Under *Arnold* and *Murphy*, the prerequisite for modification is the presence of "unforeseen circumstances" warranting modification. *Arnold*, 869 F.3d at 243; *Murphy*, 474 F.3d at 149. If this were a Chapter 13 case, a commission like the one described here, if received during the plan term, would require modification of the plan so that creditors might share in the debtor's unexpected good fortune. *See Arnold*, 869 F.2d at 241-42; *Murphy*, 474 F.3d at 149. However, this is a Chapter 11 Subchapter V case, and the statutory scheme differs from that of Chapter 13.

10. Regarding modification, Section 1193(c) provides:

> If a plan has been confirmed under section 1191(b) of this title, **the debtor may modify** the plan at any time within 3 years, or such longer time not to exceed 5 years, as fixed by the court, but may not modify the plan so that the plan as modified fails to meet the requirements of section 1191(b) of this title. The plan as modified under this subsection becomes the plan only if circumstances warrant such modification and the court, after notice and a hearing, confirms such plan, as modified, under section 1191(b) of this title.

11 U.S.C. § 1193(c) (emphasis added). Thus, a creditor cannot seek modification of a confirmed Subchapter V plan to demand that more monies be contributed to the plan.

11. It is doubtful that a Subchapter V debtor has an obligation to seek a modification to increase payments based on unanticipated post-confirmation

8

income. Chesney's plan payment obligations were determined at confirmation based upon her projected disposable income. 11 U.S.C. §§ 1191(c)(2)(A) & (3); *In re Cleary Packaging, LLC*, 36 F.4th 509, 514 (4th Cir. 2022) ("Under the governing rules of a Subchapter V proceeding, the bankruptcy court need only find that such a plan provides that all of the debtor's projected disposable income is paid to creditors for a 3- to 5-year period and that it be feasible."). Chesney is presently paying those sums and that would appear to be all that the law requires of her.

12. A debtor may seek plan modification, but Section 1193(c) stipulates that this must be "warranted" by the "circumstances." 11 U.S.C. § 1193(c). To date, no cases have described those qualifying circumstances. However, they would not appear to include an *Arnold*-style obligation that a debtor must modify the plan to pay more to creditors because more income has become available. Ever since the 2005 Bankruptcy Abuse Prevention and Consumer Protection amendments, Congress has moved away from such "best efforts" payment standards in favor of statutorily defined payment obligations, based on IRS collection standards.

13. Another bankruptcy court has suggested that we may analogize "warranting circumstances" to those found under § 1127(b), which uses the same language. *In re Samurai Martial Sports, Inc.,* 644 B.R. 667, 680-81 (Bankr. S.D. Tex. 2022). However, the cases interpreting Section 1127(b) deem "unforeseen circumstances" to be matters "[that] render the confirmed plan unworkable . . . ." *Id.*, (quoting 7 *Collier on Bankruptcy* ¶ 1127.03[2][a] (16th

9

ed. 2023). These circumstances would not appear to include changes that make a workable plan even more workable (due to the contribution of additional disposable income).

14. But even that is speculation; Chesney has not yet received any income, so she was not yet obliged to amend her schedules. Her failure to do what was not required of her does not in any way constitute cause to grant relief from stay to an individual creditor to pursue those unrealized commissions for their own benefit.

15. As to the Keiths' alternative assertion that they are not stayed because the Plan did not contain a provision enjoining collection activity by creditors with nondischargeable claims, I do not agree. The Keiths rely on *Dolven v. Bartleson (In re Bartleson)*, a case that held the confirmation of a Chapter 11 plan that would completely satisfy a nondischargeable debt did not preclude that creditor from exercising collection rights outside the plan against non-plan assets. 253 B.R. 75, 84 (B.A.P. 9th Cir. 2000). Their reasoning was that since a nondischargeable debt was not discharged, then the plan discharge of Section 1141 does not apply.

16. We need not consider whether *Bartleson* is correct, because the case is inapposite to this circumstance. Here, we have a nonconsensual Subchapter V plan, not a Chapter 11 plan. Because investor/creditors like the Keiths opposed confirmation, Chesney confirmed a nonconsensual plan under 1191(b). Due to Section 1192, Chesney did not receive a discharge at confirmation--she will not receive her discharge until the end of plan

payments. 11 U.S.C. § 1192(a). Instead of a discharge injunction, the Section 362 automatic stay continues to apply during the plan term. 11 U.S.C. §§ 362(c)(1)-(2). It forecloses the collection of debts from estate property and from the debtor. *See* 11 U.S.C. § 362(a). The stay applies to nondischargeable debts just as it does to the claims of other creditors. *See In re Mu'min*, 374 B.R. 149, 161-62 (Bankr. E.D. Pa. 2007) ("a judgment of nondischargeability of a particular debt gives a creditor no additional advantage") (quoting *In re Cardillo*, 172 B.R. 146, 151 (Bankr. N.D. Ga. 1994)); *see also Boatmen's Bank v. Embry (In re Embry)*, 10 F.3d 401, 404 (6th Cir. 1993) (concluding that debts excepted from discharge may not be executed upon property of the estate, which is still protected by the automatic stay); *Parker v. Boston Univ. (In re Parker)*, 334 B.R. 529, 536 (Bankr. D. Mass. 2005) ("There is simply no provision in the bankruptcy code that suggests that debts declared or presumed nondischargeable are no longer subject to the automatic stay.").

17. If Chesney's commission is approved and paid during the plan term, that commission will become estate property and be subject to the automatic stay. 11 U.S.C. § 1186(a)(2); 11 U.S.C. § 362(c)(2); *see also Debtor's Plan of Reorganization*, Case No. 22-40109, Doc. 20, § 9.5 (stating that the automatic stay shall remain in effect through closure of the Debtor's Chapter 11 case).

18. Because the debt owed the Keiths is nondischargeable, the Movants seek permission to establish liens and seek collection against the commission when it is received, even though it would be bankruptcy estate property.

11

Meanwhile, other like creditors would remain bound by the confirmed plan. The inequity of this request is apparent. As noted, nondischargeability is not a claim priority or asset preference. Lifting the stay would place the Keiths at an unfair advantage over other creditors in the bankruptcy case.

19. One might reasonably ask why, if the plan cannot be modified to claim the newly received asset, what is the harm in permitting a creditor with a nondischargeable debt to seek it outside of bankruptcy? Certainly, it is not to permit the Debtor a windfall. Rather, it has to do with the success of the Confirmed Plan. For creditors with dischargeable debts, payment is dependent on the success of Chesney's plan. And while these prospective monies were not in prospect at the time of confirmation, before that three-year plan is completed, these monies may be necessary to fund plan payments.

20. Chesney is currently 71 years old. At her age, one cannot gainsay that she will be able to continue to work for the entire plan term, nor that her employer (the second company) will continue to be able to pay her. If not, Chesney may need the decedent's estate commission to pay living expenses and to fund plan payments. Many individual debtors fund plan payments out of monies which are exempt and otherwise unreachable by creditors. Given this possibility, it would be improvident at this point in time to afford one unsecured creditor exclusive rights to these potential funds.[3]

Given all, there is no cause to lift the automatic stay at this time. Accordingly,

---

[3] This does not mean that Chesney has the right to transfer or use the commission monies during the Plan term. As Section 362 still applies throughout the case, so does Section 363(b). That provision requires that any out of the ordinary uses of estate property require notice to creditors and court approval. 11 U.S.C. § 363(b).

the Keith's Motion is **DENIED, WITHOUT PREJUDICE** to it being renewed later in the case if and when the Commission is received.

**SO ORDERED**.

| | |
|---|---|
| **This Order has been signed electronically.**<br>**The Judge's signature and Court's seal**<br>**appear at the top of the Order.** | **United States Bankruptcy Court** |